**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| NEIL EDELMAN, et al., | : | |
| | : | CIVIL ACTION NO. 09-1938 (MLC) |
| Plaintiffs, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| SUNDA CROONQUIST, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COOPER, District Judge**

The plaintiffs, Neil Edelman, Shelley Edelman, and Ruth Zafrin ("plaintiffs"), originally brought this action in New Jersey Superior Court on March 19, 2009.  (Dkt. entry no. 1, Notice of Removal, Ex. A, Compl.)  The defendant, Sunda Croonquist ("defendant"), removed the action to this Court on April 24, 2009.  (Notice of Removal.)  The Amended Complaint alleges false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and unjust enrichment claims, and seeks injunctive relief.  (Dkt. entry no. 5, Am. Compl.)

The defendant now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 38, Mot. to Dismiss.)  The plaintiffs oppose the motion.  (Dkt. entry no. 43, Pl. Br.)  The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b).  The Court will grant the motion.

BACKGROUND

The defendant is a comedian of African-American and Swedish descent.[1]  Plaintiffs Neil Edelman and Shelley Edelman are the defendant's brother- and sister-in-law, and plaintiff Ruth Zafrin is the defendant's mother-in-law.  (Am. Compl. at ¶¶ 4-5.)  The defendant is married to Ms. Zafrin's son, who is Ms. Edelman's brother.  The defendant apparently uses her experiences with her husband's family as material for her comedy act.

The plaintiffs allege that the defendant made statements about them in her comedy act, which she then posted in video clips on her website, www.sundalive.com.  (Id. at ¶¶ 12-13.) Specifically, plaintiffs allege the defendant's website contains a video clip entitled "Jewish Friends" in which the defendant compares Ms. Edelman's voice to a "cat in heat," calls her a "Jewish broad," and impersonates her in a mock introduction. (Id. at ¶¶ 23-25.)  The "Jewish Friends" video clip also

_____

[1] Although the Court could not locate a statement in the record explicitly referring to the defendant's background, we take judicial notice that the website discussed in the Amended Complaint, www.sundalive.com, contains a section called "About Sunda," which states that the defendant "was born in Paterson, New Jersey to an African-American mother and Swedish father." About Sunda, http://sundalive.com/about.html (last visited April 27, 2010).  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (internal quotations omitted) (alteration in original).  This information, which would be irrelevant in most instances, provides context to the defendant's comedy act and the allegedly defamatory statements at issue here.

2

allegedly includes the defendant characterizing Ms. Edelman as "someone who makes racist remarks," including (as performed by the defendant in an impersonation), "Oh my God, Neil, look at her; she's got light eyes and light hair, what kind of black person is she?"  (Id. at ¶ 26.)

The plaintiffs allege that in a video clip entitled "Jewish Mother-in-Law," the defendant refers to Ms. Zafrin by name ("Ruthie") and accuses her of being a racist.  In this video, the defendant allegedly "admits her ill feelings towards [sic] Mrs. Zafrin," stating:  "Have you ever met someone and in the first five seconds you say through your teeth 'I hate this bitch.'" (Id. at ¶ 34.)

The plaintiffs allege that the defendant posted derogatory written comments about them on the internet.  (Id. at ¶ 16.)  The plaintiffs further allege that the defendant posted a comment on her MySpace page claiming that Ms. Zafrin treated her other grandchildren better than the defendant's children, "probably because they're white, they're better in her eyes."  (Id. at ¶ 39.)  The defendant allegedly wrote that she "called out my mother in law for not addressing her racist family."  (Id. at ¶ 40.)  The defendant's blog allegedly contained comments referring to Ms. Edelman as "the dumbest thing with two eyes . . . I know she's stupid because she backs up [her sister in law]" and calling Ms. Edelman a "racist" because "[s]he calls black people

3

'colored' and tries to give the impression that she's better than everyone else."  (<u>Id.</u> at ¶¶ 44-45.)   The plaintiffs allege that the defendant "wrongfully accused Plaintiffs of using the 'N' word on her blog," writing:  "I'm sure the 'N' word passed through their chapped lips at one point."  (<u>Id.</u> at ¶ 46.)

The plaintiffs contend that at least one individual forwarded the blogs to Ms. Zafrin, "establishing that third parties know" that the comments referred to Ms. Zafrin.  (<u>Id.</u> at ¶ 47.)  According to the plaintiffs, the defendant "acknowledged that had been done and congratulated the person," and further wrote:  "I want to thank all my fans and friends who sent me e-mails telling me how great I am for finally standing up for my family and outing my racist in laws. . . . So whoever the person was who printed the blog about [Mrs. Edelman's sister-in-law] and sent it to my mother receives the prize!"  (<u>Id.</u> at ¶ 48.)  The plaintiffs allege that the defendant's statements "were not said in jest," because she concluded that blog entry by writing: ". . . it's sickening so let's change it to comedy . . . and laugh about the whole gang!"  (<u>Id.</u> at ¶ 49.)

The plaintiffs now assert claims for false light (Count 1), defamation (Count 2), intentional infliction of emotional distress (Count 3), negligent infliction of emotional distress (Count 4), unjust enrichment (Count 5), and seek injunctive relief (Count 6).  (Am. Compl.)  The defendant seeks dismissal of

4

all claims pursuant to Rule 12(b)(6) on the basis that the
statements referred to in the Amended Complaint in the videos of
the defendant's comedy routine are not defamatory, and that the
written statements the defendant allegedly posted on the internet
are protected opinion.  (Dkt. entry no. 41, Def. Br. at 1, 5-6;
dkt. entry no. 46, Def. Reply Br. at 1-2.)  The defendant
contends that because the plaintiffs' causes of action all derive
from the same allegations of defamation, this Court should
dismiss the Amended Complaint in its entirety.  (Def. Reply Br.
at 9.)

## DISCUSSION

### I.   12(b)(6) Standard

In addressing a motion to dismiss a complaint under Rule
12(b)(6), the Court must "accept all factual allegations as true,
construe the complaint in the light most favorable to the
plaintiff, and determine, whether under any reasonable reading of
the complaint, the plaintiff may be entitled to relief."
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.
2008).  At this stage, a "complaint must contain sufficient
factual matter, accepted as true to 'state a claim to relief that
is plausible on its face.'  A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

5

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'"  <u>Iqbal</u>, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

## II.  Choice of Law

Ms. Zafrin is a citizen of New York, the Edelmans are citizens of New Jersey, and the defendant is a citizen of California.  (<u>See</u> dkt. entry no. 33, 10-20-09 Op. on Mot. for Remand at 2, 9.)  The plaintiffs have asserted common law causes of action.  As a federal district court sitting in diversity, this Court must apply the choice of law rules of New Jersey, the forum state, to determine the applicable substantive law.  <u>See Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941).

Choice of law questions under New Jersey law require a court to apply the two-step "governmental-interests analysis."  <u>Rowe v. Hoffman-La Roche, Inc.</u>, 917 A.2d 767, 771 (N.J. 2007).  The first step is to determine whether a conflict exists between the laws of the interested states; if there is no actual conflict, the forum state applies its own law.  <u>Id.</u>  If an actual conflict exists, then the Court applies the second step to "determine the interest that each state has in resolving the specific issue in

dispute" by identifying "the governmental policies underlying the law of each state." Id.  The Court must ultimately apply the law of the state with the greatest interest in governing the particular issue.  Id.

Neither the plaintiffs nor the defendant address the choice of law question in their briefs.  The defendant cites New Jersey and New York cases in support of her motion to dismiss, and appears to assume New Jersey law applies.  The plaintiffs similarly cite New Jersey and New York cases under an apparent impression that New Jersey law governs the dispute.

The Court finds, at this juncture, that the substantive law of three states may be appropriate here:  New Jersey, the forum state, where the Edelmans live; New York, where the performances depicted in at least one of the video clips apparently occurred and Ms. Zafrin lives; and California, where, based on the Magistrate Judge's determination of the defendant's domicile, the defendant may have posted the challenged comments and videos on the internet.  See Sys. Operations, Inc. v. Scientific Games Devl. Corp., 555 F.2d 1131, 1137 (3d Cir. 1977).[2]

Because the "governmental-interests analysis" is "fact intensive," it may be "inappropriate or impossible for a court to

_____

[2] See Videos, http://www.sundalive.com/media.html (last visited April 27, 2010) (listing "Jewish Mother-in-Law" as a video from Sunda Live at "Stand Up New York!").  The Court was unable to locate the "Jewish Friends" video on either www.sundalive.com or the defendant's MySpace page.

conduct" at the motion to dismiss stage.  <u>Knechtel v.
Choicepoint, Inc.</u>, No. 08-5018, 2009 WL 4123275, at *5 (D.N.J.
Nov. 23, 2009) (citations and internal quotations omitted).
"[W]here the pleadings before the court at the motion to dismiss
stage do not permit it to properly conduct the analysis, the
court may deny the motion pending further discovery."  <u>Id.</u>
Because no party has addressed the choice of law issue, the Court
declines to address it <u>sua sponte</u>, but instead will consider the
motion to dismiss with reference to the law of each of the three
states identified as possibly applying.

## III. Defamation Claim - Count 2

Because the parties' briefs focused primarily on the
defamation claim, the Court addresses it first.  To state a claim
for defamation under New Jersey law, a plaintiff must show, in
addition to damages, "(1) the assertion of a false and defamatory
statement concerning another; (2) the unprivileged publication of
that statement to a third party; and (3) fault amounting to at
least negligence by the publisher."  <u>Edwards v. Ocwen Fed. Bank,
FSB</u>, No. 08-317, 2010 WL 398902, at *6 (D.N.J. Jan. 25, 2010)
(quotation and citation omitted).  The elements of defamation in
New Jersey comport with the Restatement (Second) of Torts.
<u>DeAngelis v. Hill</u>, 847 A.2d 1261, 1267-78 (N.J. 2004).  "A
defamatory statement is one that is false and injurious to the
reputation of another or exposes the person to hatred, contempt,

8

or ridicule or subjects another person to a loss of the good will and confidence in which he or she is held by others." Petersen v. Meggitt, 969 A.2d 500, 507 (N.J. App. Div. 2009) (internal quotations omitted).  Determining whether a statement is defamatory requires the Court to consider "the content, verifiability, and context of the challenged statements." Ward v. Zelikovsky, 643 A.2d 972, 978 (N.J. 1994).  The verifiability determination goes to whether "the statement is one of fact or opinion, because statements of opinion and name-calling, which cannot be proved true or false, are not actionable." Knierim v. Siemens Corp., No. 06-4935, 2008 WL 906244, at *15 (D.N.J. Mar. 31, 2008) (internal citation omitted).

The elements of a defamation claim under New York law are "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003).  A defamatory statement under New York law is one that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him in the minds of right-thinking people to deprive him of their friendly intercourse in society." Fordham v. Islip Union Free Sch. Dist., 662 F.Supp.2d 261, 274 (E.D.N.Y. 2009).  "[I]f the language . . . merely constitutes a general reflection on a person's character or

9

qualities, it is not a matter of such significance and importance
as to amount to actionable defamation even though it may be
unpleasant, annoying, or irksome." Id. New York law provides
absolute immunity from defamation for statements of opinion. Id.
(citing Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163,
178 (2d Cir. 2000)).

> If a statement of opinion implies that it is based on
> facts that support the opinion, but are unknown to
> persons reading or hearing it, the statement is an
> actionable mixed opinion. However, a statement of
> opinion made after a recitation of facts disclosed to
> the reader or listener, or not based on facts unknown
> to the reader or listener, is not actionable.

Id. (quotation and citation omitted). To determine whether a
statement is fact or opinion, courts consider (1) whether the
specific language has a precise, readily understood meaning, or
whether it is indefinite and ambiguous, (2) whether the statement
is capable of being objectively characterized as true or false,
(3) the full context of the communication in which the statement
appears, and (4) the broader social context surrounding the
communication, including any applicable customs or conventions
that might signal to readers or listeners that the statement is
likely opinion, not fact. Id. (quoting Donofrio-Ferrezza v.
Nier, No. 04-1162, 2005 WL 2312477, at *6 (S.D.N.Y. Sept. 21,
2005)).

California law explains that the tort of defamation
"involves the intentional publication of a statement of fact that

10

is false, unprivileged, and has a natural tendency to injure or which causes special damage." <u>Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 826 (9th Cir. 2008) (quoting <u>Smith v. Maldonado</u>, 85 Cal.Rptr.2d 397 (Cal. Ct. App. 1999)). California law recognizes defamation causes of action for either libel or slander. Cal. Civ. Code § 44. A statement of opinion "cannot be false" and is outside the meaning of defamation. <u>See</u> <u>Reese v. Barton Healthcare Sys.</u>, No. 08-1703, 2010 WL 761213, at *16 (E.D. Cal. Mar. 3, 2010); <u>see also Campanelli v. Regents</u>, 51 Cal.Rptr.2d 891, 894 (Cal. Ct. App. 1996) ("Even if they are objectively unjustified or made in bad faith, publications which are statements of <u>opinion</u> rather than fact cannot form the basis for a [defamation] action.") (emphasis in original).

A court may determine whether a statement is defamatory as a matter of law, if it is capable of only one meaning, but when the statement could constitute either a defamatory or non-defamatory construction, the meaning is a question for the trier of fact. <u>Taj Mahal Travel, Inc. v. Delta Airlines, Inc.</u>, 164 F.3d 186, 189 (3d Cir. 1998); <u>accord</u> <u>Celle</u>, 209 F.2d at 178 (under New York law, "[t]he court must decide as a matter of law whether the challenged statement is opinion); <u>Arno v. Stewart</u>, 54 Cal.Rptr. 392, 395 (Cal. Ct. App. 1966).

11

We find that the challenged statements do not constitute defamation under any of the standards discussed above.  It is undisputed that the challenged statements were published by the defendant on her website and on her MySpace page in the form of blog entries and video clips of her skits "Jewish Mother-in-Law" and "Jewish Friends."  However, the challenged statements all constitute statements of opinion rather than fact, and thus are not defamatory.

The defendant's discussion of her "ill feelings towards [sic] Mrs. Zafrin," particularly her statement, "Have you ever met someone and in the first five seconds you say through your teeth 'I hate this bitch,'" merely conveys the defendant's opinion of her mother-in-law.  (Am. Compl. at ¶ 34.)  This opinion is protected under the First Amendment and not defamatory.  See DeAngelis, 847 A.2d at 1268 ("The use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are discouraged, but such comments are not actionable.").

The defendant's calling her sister-in-law "Jewish broad" and referring to her mother-in-law as "Ruthie" lacks a "natural tendency to injure" or subject the plaintiffs to ridicule, and the plaintiffs have not contended that either characterization is false.  (Am. Compl. at ¶¶ 25, 35.)  The "cat in heat" comment is mere "colorful, figurative rhetoric that reasonable minds would

not take to be factual." Gilbrook v. City of Westminster, 177
F.3d 839, 862 (9th Cir. 1999) (quotation and citation omitted);
see also Fordham, 662 F.Supp.2d at 274.  These statements are
simply not defamatory in nature.

The defendant's characterizations of Ms. Edelman and Ms.
Zafrin as racist are closer to the type of statement that would
subject the plaintiffs to ill will and ridicule among "right-
thinking persons." See, e.g., Salomone v. Macmillan Publ'g Co.,
Inc., 411 N.Y.S.2d 105, 108 (N.Y. App. Div. 1978) ("A statement
is defamatory on its face if it is clearly damaging to the
reputation of the person to whom it related."); but see Stevens
v. Tillman, 855 F.2d 394, 402 (7th Cir. 1988) ("Accusations of
'racism' no longer are 'obviously and naturally harmful.'  The
word has been watered down by overuse, becoming common coin in
political discourse.").[3]  However, we find that the challenged
statements express the defendant's non-actionable opinion that
Ms. Edelman and Ms. Zafrin are racists, and note that the
defendant's comments as recounted in the Amended Complaint
articulate bases for this opinion.

---

[3] The Stevens court was applying the Illinois common law of
defamation, which, like New Jersey, New York, and California, is
consistent with the Restatement (Second) of Torts.  855 F.2d at
400; see also Copp v. Paxton, 52 Cal.Rptr.2d 831, 837 (Cal. Ct.
App. 1996); Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (N.Y.
App. Div. 1999).

The defendant apparently believes Ms. Zafrin is a racist because Ms. Zafrin "treated her other grandchildren better than Defendant's children[,] 'probably because they're white, they're better in her eyes.'"  (Am. Compl. at ¶ 39.)  The defendant explains her opinion that Ms. Edelman is a racist by stating that Ms. Edelman "calls black people 'colored' and tries to give the impression that she's better than everyone else."  (Id. at ¶ 45.)  Based on these explanations, the other challenged statements, including that the defendant is "sure the 'N' word passed through their chapped lips at one point," the defendant's impersonation of Ms. Edelman stating ". . . what kind of black person is [the defendant]," and the defendant's thanks to her fans for supporting her in "standing up for [her] family and outing [her] racist in laws" merely constitute additional reiterations of the defendant's opinion that the plaintiffs are racist vis-a-vis her interactions with them.  See Yourman v. People's Sec. Life Ins. Co., 992 F.Supp. 696, 706 (D.N.J. 1998) ("[S]tatements . . . of opinion premised on disclosed facts [are], as a matter of law, not defamatory."); see also Stevens, 855 F.2d at 400 ("A . . . statement in the form of an opinion . . . is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.") (quoting Restatement (Second) of Torts § 566 (1977) (emphasis added); Kotlikoff v. The Cmty. News, 444 A.2d 1086, 1089 (N.J. 1982).

14

The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation.  Cf. Milkovich v. Lorain Journal Co., 497 U.S. 1, 21-22 (1990) (finding allegation of perjury to state a claim for defamation as "an articulation of an objectively verifiable event," noting existence of transcripts of judicial proceedings).  The defendant's characterization, in context, appears personal to her and does not imply that the plaintiffs believe in the subjugation of an entire race.  Rather, the challenged statements assert that the defendant's in-laws have treated her poorly, and she believes it is on account of her ethnic background.  See Stevens, 855 F.2d at 402 ("The speaker may use 'she is a racist' to mean 'she is condescending to me, which must be because of my race because there is no other reason to condescend'--a reaction that attaches racial connotations to what may be an inflated opinion of one's self. . . . Meanings of this sort fit comfortably within the immunity for name-calling.").

Turning to the alleged statement, "I don't really have a problem with my husband's sister except she's the dumbest thing with two eyes and I know she [is] stupid because she backs up [her sister-in-law]," it appears that both parties agree that "husband's sister" refers to Ms. Zafrin's other daughter-in-law, who is not a party to this action, and "[her sister-in-law]"

15

refers to Ms. Edelman.  (Am. Compl. at ¶ 44; Def. Br. at 7; Def.
Reply Br. at 5.)  Again, this statement expresses an opinion, not
a defamatory fact, that the defendant's husband's sister is dumb,
and is non-actionable name-calling.  Additionally, defamatory
statements must be "of and concerning" the plaintiff.  Taj Majal
Travel, 164 F.3d at 189; accord Moccio v. Cornell Univ., No. 09-
3601, 2009 WL 2176626, at *3 (S.D.N.Y. July 21, 2009).  This
statement refers only obliquely to Ms. Edelman and would be non-
actionable as to all plaintiffs for that reason as well.

     We find that, based on the foregoing analysis, the
plaintiffs have failed to state a claim for defamation against
the defendant.  Accordingly, Count 2 will be dismissed.

**IV.  False Light - Count 1**

     The tort of false light under New Jersey law "consists of
publication of a falsity which significantly misrepresents the
plaintiff's character, history, activities or beliefs."
Hornberger v. Am. Broad. Co., Inc., 799 A.2d 566, 598 (N.J. App.
Div. 2002).  The publication must be "highly offensive to a
reasonable person" and made with knowledge or reckless disregard
of its falsity.  Romaine v. Kallinger, 537 A.2d 284, 290 (1988).
No "relational right of privacy" exists such that a false light
action may be maintained by a person, such as a family member,
who was not themselves the subject of the alleged falsehood.  Id.
at 291.

16

The plaintiffs cannot maintain a false light claim under the New Jersey standard.  For the same reasons discussed above, the defendant's characterization of the plaintiffs as racist is not a verifiable fact, but rather an opinion.  The tort of false light requires "that the published material contain a false portrayal," indicating "that something false must be demonstrated . . . it follows logically that if falsity is required to state a false light claim, truth must be a defense."  Machleder v. Diaz, 801 F.2d 46, 53 (2d Cir. 1986) (applying New Jersey law).  "Factual statements, unlike non-factual statements, are uniquely capable of objective proof of truth or falsity.  Opinion statements, in contrast, are generally not capable of proof of truth or falsity because they reflect a person's state of mind."  Ward, 643 A.2d at 979; see also McLaughlin v. Rosanio, Bailets & Talamo, Inc., 751 A.2d 1066, 1071 (N.J. App. Div. 2000) ("Since opinions and name-calling cannot be proved true or false, they are not actionable.").

New York law does not recognize the tort of false light. Howell v. N.Y. Post Co., Inc., 612 N.E.2d 699, 703-04 (N.Y. 1993); accord Moccio, 2009 WL 2176626, at *3.  Therefore, the plaintiffs cannot maintain this claim under New York law.

California courts "have largely collapsed 'false light' causes of action into libel."  Cort v. St. Paul Fire & Marine Ins. Co., Inc., 311 F.3d 979, 987 (9th Cir. 2002) (citing M.G. v.

Time Warner, Inc., 107 Cal.Rptr.2d 504, 514-15 (Cal. Ct. App. 2002)).  Libel is a form of defamation, defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.  In addition to the elements of libel, a false light claim requires "the invasion of some type of privacy interest."  Id.  "When . . . an invasion of privacy claim rests on the same allegations as a claim for defamation, the former cannot be maintained as a separate claim if the latter fails as a matter of law."  Alszeh v. Home Box Office, 80 Cal.Rptr.2d 16, 20 (Cal. Ct. App. 1998).  Because the plaintiffs' defamation claim fails under any standard, they could not maintain a claim for false light under California law.

The plaintiffs have failed to state a claim for false light invasion of privacy under the law of any of these jurisdictions. Accordingly, the Court will dismiss Count 1.

**V.   Intentional and Negligent Infliction of Emotional Distress Claims - Count 3 and Count 4**

To state a claim for intentional infliction of emotional distress under New Jersey law, "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1115 (N.J. 2009) (quotation omitted)

18

(citing <u>Buckley v. Trenton Saving Fund Soc.</u>, 544 A.2d 857, 863-64 (N.J. 1988)).  The tort of negligent infliction of emotional distress "can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care."  <u>Decker v. The Princeton Packet</u>, 561 A.2d 1122, 1128 (N.J. 1989).

    "There is . . . a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results," such that New Jersey courts do not permit claims for infliction of emotional distress to proceed when the factual basis for the claim is non-actionable alleged defamation.  <u>Id.</u> at 1129.  "Just as with a claim of intentional infliction of emotional distress, where defamation fails, so should a claim for negligent infliction of emotional distress."  <u>G.D. v. Kenny</u>, 984 A.2d 921, 933 (N.J. App. Div. 2009).  Accordingly, the plaintiffs cannot obtain relief for emotional distress under New Jersey law.

    New York courts have recognized that accusing someone of being racist, "while highly objectionable, is neither sufficiently extreme nor outrageous to support a claim for intentional infliction of emotional distress."  <u>Como v. Riley</u>, 731 N.Y.S.2d 731, 731-32 (N.Y. App. Div. 2001).  Where the "facts alleged by the plaintiff are inseparable from the tort of defamation," a plaintiff may not recover on a negligence theory.

Id.  For both of these reasons, the plaintiffs cannot maintain an emotional distress claim under New York law.

The elements of the tort of intentional infliction of emotional distress as stated by California courts are:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress, (2) the plaintiff's suffering severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Catsouras v. Dep't of Cal. Hwy. Patrol, 104 Cal.Rptr.3d 352, 367 (Cal. Ct. App. 2010).  "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.  California courts do not recognize an independent tort of negligent infliction of emotional distress; "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element."  Potter v. Firestone Tire & Rubber Co., 863 P.2d 795, 807 (Cal. 1993).

We have found that the challenged statements are not defamatory.  Because the Amended Complaint does not allege any outrageous conduct besides the challenged statements, the plaintiffs simply cannot maintain an action based on those statements for emotional distress--or any other theory--under California law.  Couch v. San Juan Unified Sch. Dist., 39 Cal.Rptr.2d 848, 856 (Cal. Ct. App. 1995) ("When claims for

invasion of privacy and emotional distress are based on the same factual allegations as those of a simultaneous libel claim, they are superfluous and must be dismissed."); see also Reader's Digest Ass'n v. Superior Court, 690 P.2d 610, 624 (Cal. 1984).

For the foregoing reasons, the Court will dismiss Count 3 and Count 4.

## VI. Unjust Enrichment and Injunctive Relief - Count 5 and Count 6

Because the plaintiffs have failed to state a claim on any of their substantive causes of action, we will also dismiss Count 5 and Count 6, which are predicated on those causes of action.

**CONCLUSION**

The Court, for the reasons stated supra, will grant the defendant's motion to dismiss the Amended Complaint.  The Court will issue an appropriate Order and Judgment.


                                      s/Mary L. Cooper
                                   **MARY L. COOPER**
                                   United States District Judge



Dated:    April 30, 2010

21
